## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ALESHA CYRESE HENDERSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 12-CV-68-TCK-FHM** |
| | ) |
| **STANLEY GLANZ, SHERIFF OF** | ) |
| **TULSA, in his individual and official** | ) |
| **capacities;** | ) |
| **CORRECTIONAL HEALTHCARE** | ) |
| **MANAGEMENT OF OKLAHOMA, INC.,** | ) |
| **DALEAN LYNN JOHNSON,** | ) |
| **MICHAEL THOMAS,** | ) |
| **SUSAN PINSON, RN; and** | ) |
| **DOES I-X,** | ) |
| | ) |
| **Defendants.** | ) |

### OPINION AND ORDER

Before the Court are Defendant Stanley Glanz's Motion to Dismiss Amended Complaint

("Glanz's Motion to Dismiss") (Doc. 9) and Defendants Dalean Lynn Johnson and Michael Thomas'

Motion to Dismiss ("Officers' Motion to Dismiss") (Doc. 10).

**I.     Factual Allegations**

Plaintiff Alesha Cyrese Henderson, a female, was in the custody of the Tulsa County

Sheriff's Department at the Tulsa County Jail ("Jail") in September 2011.  On September 27, 2011,

Plaintiff went to the medical unit for chest pains.  While in the medical unit, Plaintiff was left alone

in an unlocked room known as the "tub room."  The Complaint describes the tub room as follows:

> The tub room is commonly used to hold inmates that are supposed to be separated
> from others.  However, the tub room is not a safe or secure area. Particularly, there
> is no video surveillance in or around the tub room. Indeed, there is no such
> surveillance anywhere in the medical unit. And it is well-known by Jail personnel
> and inmates alike that the medical unit in general, and the tub room in particular, is
> not video monitored. Additionally, it is easy for inmates to access the tub room. The

lock on the tub room door is not secure, as many inmates know how to unlock the door.

(Compl. ¶ 20.)  While alone in the tub room, Plaintiff was shackled and immobile.  Plaintiff alleges that, while being detained in the tub room, she was under the "ostensible supervision" of (1) Defendant Susan Pinson ("Pinson"), a registered nurse employed by Defendant Correctional Healthcare Management of Oklahoma, Inc. ("CHMO"); (2) Defendant Dalean Johnson ("Officer Johnson") and Michael Thomas ("Officer Thomas") (collectively "Officers"), detention officers employed by the Tulsa County Sheriff's Department.

At some point while Plaintiff was detained in the tub room, Pinson, Officer Thomas, and other CHMO employees suddenly vacated the medical unit.  This left only Officer Johnson to supervise and monitor the entire medical unit.  During this time, an inmate named Jessie Earl Johnson ("Inmate Johnson") was moving freely, unescorted, and unsupervised through the medical unit.  According to the Complaint, Inmate Johnson was permitted to leave his designated work area and proceed to the medical unit without any escort.  Inmate Johnson opened the unlocked door to the tub room and proceeded to rape and assault Plaintiff.  No officer or other person heard Plaintiff's cries or stopped the attack.

Relevant to the pending motions to dismiss, Plaintiff asserts a claim arising under 42 U.S.C. § 1983 ("§ 1983") for cruel and unusual punishment, in violation of the Eighth and/or Fourteenth Amendments of the United States Constitution.  Plaintiff alleges that all Defendants were deliberately indifferent to Plaintiff's health and safety.  Such acts of deliberate indifference include failures to:

(A) provide adequate supervision of Plaintiff, and inmates like Plaintiff, and appropriate separation from male inmates for female inmates; (B) create and implement appropriate supervision plans over both female inmates, like Plaintiff, and

2

male inmates, like Inmate Johnson, within the medical unit; (C) take precautions necessary to protect the health and safety of Plaintiff, and female inmates like Plaintiff, such as additional monitoring and supervision; (D) assure that known "blind spots" within the Jail, such as the tub room, are adequately supervised and secured; (E) alleviate known security issues with the tub room door; (F) monitor, supervise and document the movement of prisoners, like Inmate Johnson, within the Jail; (G) supervise prisoners, such as Plaintiff, who are left in restraints; and (H) adequately staff the medical unit.

(Compl. ¶ 41.)  According to the Complaint, these and other failures are in violation of numerous Oklahoma Jail Standards, which are part of the Oklahoma Administrative Code.

Plaintiff further alleges that Defendant Sheriff Glanz ("Sheriff Glanz") is subject to supervisory liability because there is a link between the above acts or omissions and the customs, practices, and policies promulgated by Sheriff Glanz.  Such policies include:

[a.] The failure to promulgate and implement adequate supervision and separation policies, procedures or guidelines responsive to the special needs of the female inmates; [b.] The failure to ensure adequate supervision and safety precautions with respect to areas that are not monitored via surveillance equipment, or "blind spots" within the Jail; [c.] The failure to alleviate known security risks with respect to the "tub room" door; [d.] The failure to ensure the control and supervision over the movement of inmates from one location to another; [e.] The pattern and practice of understaffing the medical unit, leaving inmates vulnerable and increasing the risk of harm; [f.] The tight budgetary restrictions which create substantial risks to inmate safety; [g.] The failure to create and implement appropriate supervision plans concerning female inmates in the medical unit; [h.] The failure to take precautions to prevent danger to the health and well-being of female inmates; and [I.] The failure to train Jail personnel and staff, including CHMO employees, regarding: the separation of the sexes within the Jail, the supervision of female inmates within the Jail, the special security needs of female inmates, the supervision of inmates placed in restraints, and the control and supervision over the movement of inmates from one area to another.

(Compl. ¶ 45.)

II.     **Rule 12(b)(6) Standard**

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted.  The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)).  In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974).  Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).  Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.*  "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.  In addition, the Tenth Circuit has stated that "the

4

degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Id.*

### III.    Officers' Motion to Dismiss

The Due Process Clause of the Fourteenth Amendment governs the conditions or restrictions that may be placed upon a pretrial detainee, while the Eighth Amendment governs conditions or restrictions that may be placed upon sentenced inmates. *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979) ("Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be "cruel and unusual" under the Eighth Amendment."). Because the protections extended to pretrial detainees under the Fourteenth Amendment are at least as broad as those extended to inmates under the Eighth Amendment, the Court need only analyze whether Plaintiff has stated a plausible claim for relief under the Eighth Amendment.[1]

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). This minimum standard "does not impose constitutional liability on prison officials for every injury suffered by an inmate." *Id.* In order to establish a deprivation of her Eighth Amendment rights, Plaintiff must allege and ultimately prove

---

[1] According to Plaintiff, "it is not entirely clear whether Plaintiff was a convicted prisoner or pretrial detainee at the time she was assaulted." (Pl.'s Resp. to Officers' Mot. to Dismiss 5.) Officers contend that Plaintiff was a convicted prisoner serving a sentence for arson and assault on a detention officer. (Officer's Mot. to Dismiss 2 n.1.) The Court will not make any factual determinations at this stage of the proceedings but instead analyzes whether Plaintiff has stated a claim under either the Eighth or Fourteenth Amendment.

two elements: (1) her alleged injury or deprivation was sufficiently serious; and (2) the prison officials had a sufficiently culpable state of mind to violate the constitutional standard. *Id.* Officers do not challenge whether the alleged attack was sufficiently serious but challenge whether Plaintiff has pled sufficient facts as to the culpability element.

The second element requires Plaintiff to prove that Officers acted with deliberate indifference. *Id.* The "deliberate indifference" standard is subjective, meaning it inquires into Officers' actual state of mind. *Id.* In order to act with deliberate indifference, a prison official must (1) actually be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) draw such inference, and (3) fail to take reasonable steps to alleviate the risk. *Id.* "Although deliberate indifference is a subjective inquiry, a jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition." *Id.* "In response, the defendant may present evidence to show that he was in fact unaware of the risk, in spite of the obviousness." *Id.*

Officers argue that Plaintiff's pled facts "fall far short of describing or allowing the inference that either [Officer] knew that placing [Plaintiff] in an unlocked tub room that was not monitored by video in the medical unit with the door closed when a detention officer remained on duty was intended to inflict a 'punishment' in the form of sexual assault by another inmate posed." (Officer's Mot. to Dismiss 6.) Plaintiff argues that she has alleged an "obvious and excessive risk to Plaintiff's safety that was known and disregarded" by Officers because the "medical unit, and tub room specifically, is a known 'blind spot' that is unmonitored by surveillance equipment" and that the medical unit "is one area where of the Jail where male and female inmates come into close proximity with each other." (Pl.'s Resp. to Officers' Mot. to Dismiss 8.)

Plaintiff has stated a plausible claim for deliberate indifference by the Officers. Plaintiff has alleged that the Officers were aware of the lack of surveillance of the tub room and that certain male inmates, including Inmate Johnson, had access to the tub room. Plaintiff alleged that Officers left Plaintiff shackled in the tub room while it was unlocked and unmonitored, which could be deemed an obvious risk. These facts could potentially demonstrate that Officers were (1) actually aware of facts from which the inference could be drawn that Plaintiff faced a substantial risk of serious harm, (2) that Officers drew such inference, and (3) that Officers failed to take reasonable steps to alleviate that risk such as locking the door, removing Plaintiff's shackles, or removing Plaintiff from the unlocked tub room. Officers describe Plaintiff's allegations as conclusory, arguing that she has alleged no facts supporting that the tub room is actually a "blind spot" within the Jail. However, Plaintiff need not prove her allegations in her Complaint. She must only allege facts that state a non-speculative claim for relief and provide Officers with notice of the actual grounds of the claim against them. Plaintiff's Complaint accomplishes both, and Officers' motion to dismiss is denied.[2]

## IV.    Glanz's Motion to Dismiss

Glanz moves to dismiss the claims asserted against him in both his individual and official capacities.

---

[2] Officers' cited cases are unpersuasive because they are at later stages of litigation. *Berry v. Sherman*, 365 F.3d 631, 634-35 (8th Cir. 2004) (analyzing summary judgment evidence); *See Adames v. Perez*, 331 F.3d 508, 513-14 (5th Cir. 2003) (analyzing trial evidence); *Verdecia v. Adams*, 327 F.3d 1171, 1176 (10th Cir. 2003) (analyzing summary judgment evidence). Further, none of the cases are so factually aligned with this case that they demonstrate that Plaintiff has no plausible claim for relief.

A.      **Individual Capacity**

Plaintiff's claim against Glanz in his individual capacity is based on supervisory liability. To establish a claim of supervisory liability under § 1983, a plaintiff must plead and ultimately prove that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."   *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (rejecting notion that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 62 (2009), abrogated supervisory liability in § 1983 context or that it requires "'on-the-ground, moment-to-moment control'" of the subordinate at the time of the alleged violation) (quoting *Davis v. City of Aurora*, 705 F. Supp. 2d 1243, 1263-64 (D. Colo. 2010)).

Glanz argues that the Complaint fails to establish "an affirmative link between the alleged constitutional violation and the [Glanz's] personal participation."  (Glanz's Mot.  to Dismiss 8.) Glanz further argues that the Complaint fails to allege that Glanz was "privy to any information that would allow a reasonable finder of fact to conclude that he ignored an excessive risk of harm to this Plaintiff."  (*Id.*)  Thus, Glanz challenges the second and third elements.

The Court finds that Plaintiff has alleged sufficient facts to survive a motion to dismiss. Plaintiff has alleged that Glanz has a "custom of maintaining inadequate supervision and safety precautions with respect to known areas that are not monitored via surveillance equipment, or 'blind spots,' within the Jail," (Compl. ¶ 31), and that this custom is affirmatively linked to her harm because the sexual assault took place in such a blind spot.  Further, Plaintiff alleges that Glanz was aware of prior sexual assaults and sexual encounters occurring in these "blind spots" within the Jail.

8

This adequately pleads facts relevant to causation and Glanz's mental state, *i.e.*, his deliberate indifference to a known serious risk of improper sexual conduct occurring in blind spots such as the tub room.  Plaintiff also alleges that Glanz maintained a policy of understaffing these blind spots, despite his awareness of frequent sexual assaults or encounters occurring in such spots.  Under Tenth Circuit case law and similar cases within this district, these alleged facts could potentially support a finding of supervisory liability.  *See Tafoya v. Salazar,* 516 F.3d 912, 920 (10th Cir. 2008) (reversing grant of summary judgment to sheriff and holding that sheriff's failure to install cameras where he knew prior sexual assaults had taken place supported a finding of deliberate indifference to rights of sexually assaulted female inmate); *Poore v. Glanz*, No. 11-CV-797-CVE-TLW, 2012 WL 728199, at * 4 (N.D. Okla.  March 6, 2012) (denying motion to dismiss claim asserted against Glanz in his individual capacity where plaintiff inmate was allegedly raped by detention officer in north wing of the medical unit of the Tulsa County Jail, which was an alleged known "blind spot," and where Glanz took no measures to monitor the blind spots or prevent harm to inmates) (discussing Glanz's alleged failure to "properly staff the north wing of the medical unit" with at least one female detention officer).  Finding these allegations sufficient to survive a Rule 12(b)(6) motion, the Court does not reach Plaintiff's other identified customs and policies that allegedly caused the constitutional violation.

### B.    Official Capacity

A claim against Glanz in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents.  *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010).  Thus, the Court must apply the standard of liability applicable to counties in assessing whether Plaintiff's official capacity claim against Glanz survives a motion to dismiss.  *See*

*id.* (observing that *Iqbal* did not impact the analysis for "municipal liability" under § 1983, although *Iqbal* impacted certain aspects of supervisory liability analysis).  A county may be held liable "when the enforcement of their policies or customs by their employees causes a deprivation of a person's federally protected rights."  *Dodds*, 614 F.3d at 1202.  A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (internal quotations omitted).

Glanz has final policymaking authority at the Jail.  *See Poore*, 2012 WL 728199, at * 4 (finding that Glanz was final policymaker for Tulsa County Jail (citing *Meade v. Grubbs*, 841 F.2d 1512, 1530 (10th Cir.1988)).  For the same reasons explained above with respect to the individual liability claim, the Court finds that Plaintiff's allegations regarding Glanz's custom of inadequate supervision, staffing, and surveillance of known "blind spots" bears a sufficient causal link to Plaintiff's sexual assault in the tub room, which is an alleged blind spot within the Jail, to survive a motion to dismiss.  *See Poore*, 2012 WL 728199, at * 4 (denying motion to dismiss official capacity claim against Glanz based on his awareness of blind spots and sexual encounters occurring in such blind spots); *see generally Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) ("The legal elements of an individual's supervisory liability and a political subdivision's liability, however, are similar enough that the same standards of fault and causation should govern.").  Again, the Court acknowledges that Plaintiff has identified several other customs and policies relevant to her municipal liability claim but finds no reason to discuss such allegations at this juncture.

**V.**      **Conclusion**

Glanz's Motion to Dismiss (Doc.  9) is DENIED.  Officers' Motion to Dismiss (Doc. 10) is

DENIED.

SO ORDERED this 27th day of November, 2012.


**TERENCE KERN**
**United States District Judge**

11