# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| ALESHIA CYRESE HENDERSON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 12-CV-68-JED-FHM |
|  | ) |  |
| STANLEY GLANZ, et al. | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION AND ORDER

The Court has for its consideration defendants' Motion and Brief to Strike the Expert Report of Plaintiff's Expert Jeff Eiser (Doc. 80). Jeff Eiser is an expert witness on behalf of the plaintiff, Aleshia Cyrese Henderson, as to standards in the corrections industry. In particular, defendants seek an order striking Mr. Eiser's expert report and precluding his testimony at trial. Defendants argue that Mr. Eiser's testimony is nothing more than *ipse dixit* and therefore subject to exclusion under Fed. R. Evid. 702 and Fed. R. Civ. P. 26.[1]

In this case, Henderson alleges that she was raped while in the custody of the Tulsa County Sheriff's Office ("TCSO") at the Tulsa County Jail. Eiser's expert report discusses the circumstances which led to Henderson's alleged assault and what steps, in his opinion, should have been taken by the defendants to prevent it. On February 6, 2014, the Court held a hearing with respect to Eiser's admissibility as an expert pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

---

[1] To an extent, the substance of defendants' briefing conflates the Rule 26 standards with those applicable to a challenge under Rule 702. The standards are distinct and the Court will address each individually in determining the defendants' challenge to Eiser's testimony.

# Rule 26

Defendants first challenge Eiser's report under Rule 26, arguing that it fails to provide "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Specifically, defendants argue that Eiser's expert report does not sufficiently identify the basis and reasons for his opinions.

Rule 26(a)(2)(B) provides that an expert report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

"The reports are intended not only to identify the expert witness, but also 'to set forth the substance of the direct examination.'" *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting Rule 26 advisory committee note)). This allows the opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Id*.

Defendants challenge the first prong of Rule 26(a)(2)(B)—that Eiser's expert report does not provide a complete statement of his opinions or the basis and reasons for them. The Court disagrees. Eiser's report adequately sets out his opinions in this case, provides the standards upon which he is relying, and describes his relevant experience as it applies to the facts of this

case. The substance of the report was more than enough to put defendants on notice as to what the contours of his testimony would be. As such, Eiser's report meets the standards of Rule 26, however the real gravity of defendants' challenge falls under the Rule 702/*Daubert* standards, discussed below.

**Rule 702**

As noted, defendants also argue that Eiser's expert report and opinions in this case are merely *ipse dixit*; that is, his opinions are correct because he says they are. Specifically, defendants argue that Eiser fails to (1) identify the factual basis and industry standards upon which he relies, or (2) identify a methodology used in reaching his opinions.

Pursuant to Federal Rule of Evidence 702, "[e]xpert testimony is admissible only if it is potentially helpful to the jury and '(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case.'" *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (quoting Fed. R. Evid. 702). In *Daubert*, the Supreme Court suggested factors to guide "trial courts in determining whether proposed expert testimony is based on reliable methods and principles: (1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *Baines*, 573 F.3d at 985 (citing *Daubert*, 509 U.S. at 593-94). The *Daubert* inquiry is "flexible," and the district court does not need to consider every *Daubert* factor. *Id*. at 989–90; *see also Bitler v. A.O. Smith. Corp*., 400 F.3d 1227, 1233 (10th Cir. 2004)

("[T]his list is neither definitive nor exhaustive and [ ] a trial judge has wide discretion both in deciding how to assess an expert's reliability and in making a determination of that reliability.").

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, advisory committee's note; *see also Dean v. Thermwood Corp.*, 10-CV-433-CVE-PJC, 2012 WL 90442 (N.D. Okla. Jan. 11, 2012) ("Where an expert bases his opinions on his experience rather than scientific testing, he still must explain how the experience informs his opinions.").

In *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts when considering a *Daubert* challenge. The court should make a preliminary finding whether the expert is qualified, by determining "if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Id*. at 1232-33 (quoting *Daubert*, 509 U.S. at 592). The proponent of expert testimony must establish that the expert used reliable methods to reach his conclusion and that the expert's opinion is based on a relevant factual basis. *See id.* at 1233. "[A] trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." *Id.* However, an impermissible analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under *Daubert. See id.*; *see also Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005). "Neither *Daubert* nor the Federal Rules of Evidence 'require[ ] a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'" *Norris*, 397 F.3d at 886 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

This Court recently discussed the admissibility of a jail standards expert in *Cox v. Glanz*, 11-CV-457-JED-FHM, 2014 WL 916644 (N.D. Okla. Mar. 10, 2014). There, the Court granted the plaintiff's motion in limine to exclude the defendant's proposed expert, reasoning that his opinions were not helpful to the trier of fact because they were unconnected to any identifiable standards and merely amounted to testimony on an ultimate issue of law—whether the defendant had been deliberately indifferent. *Id*. at *6. The Court emphasized that, where an expert witness' testimony is the type that is dependent on experience, as is the case here, that witness "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. at *4 (quoting Fed. R. Evid. 702 advisory committee's note) (italics omitted).

As an initial matter, Eiser's expert report details his qualifications and experience, which are extensive. Eiser states that he has "over 29 years of practical work experience in the operation and administration of one of the largest local corrections systems in the United States." (Doc. 92-1, at 2). He also discusses his writing on the subject of jail administration, having co-authored the "Ohio Jail Administrator's Handbook" and training program curriculum used to train individuals in jail administration. Eiser is also an adjunct instructor in criminal justice and has testified as a jail operations expert since 1994. The Court therefore finds that Eiser is qualified to render a professional opinion regarding jail standards and administration.

Eiser's expert report does not suffer from the same deficiencies as those found in *Cox*. Here, Eiser's expert report directly states the standards on which he is relying:

> My professional opinions are a function of the unique facts and circumstances in this case and are based on my training, education and 29 years of practical experience and the contemporary corrections industry standards and practices that existed at the time of the incident, specifically: Oklahoma Administrative Code – Title 310 – Oklahoma State Department of Health: Chapter 670: Jail Standards; the Standards for Adult Local Detention Facilities (4th Edition; June 2004) and

5

> Core Jail Standards (1st Edition, 2010) promulgated by the American Correctional Association (Lanham, Maryland).

(*Id.*, at 1-2). He likewise provides a list of materials he has reviewed in this case and provides a synopsis of the facts he has gleaned from those materials. Following his factual synopsis, Eiser provides a list of specific jail standards that he believes were violated based upon the facts of Henderson's case. Eiser does make an effort to connect his opinions to what he considers relevant standards within the industry. That is not to say his report is without fault, but as the Supreme Court has noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). Overall, Eiser's opinions are helpful to a prospective jury because they assist the jury in understanding relevant standards in the corrections industry and how sexual assault prevention is, and can be, implemented in jails such as the Tulsa County Jail. Furthermore, his opinions are the product of a reliable methodology. Accordingly, Eiser's report and his anticipated testimony do not warrant exclusion under Rule 702 or *Daubert*.

As noted, there are problems with Eiser's expert report that merit discussion. In *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988), the Tenth Circuit concluded that an expert should not be permitted to give an opinion on an ultimate issue of law. 853 F.2d at 807-09. In arriving at that conclusion, the court noted that "a number of federal circuits have held that an expert witness may not give an opinion on ultimate issues of law," and stated:

> The courts in these decisions draw a clear line between permissible testimony on issues of fact and testimony that articulates the ultimate principles of law governing the deliberations of the jury. These courts have decried the latter kind of testimony as directing a verdict, rather than assisting the jury's understanding and weighing of the evidence. In keeping with these decisions, we conclude the expert in this case was improperly allowed to instruct the jury on how it should decide the case. The expert's testimony painstakingly developed over an entire

> day the conclusion that defendants violated plaintiffs' constitutional rights. . . . By permitting the jury to hear this array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof under § 1983, the trial court allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence. . . . In no instance can a witness be permitted to define the law of the case.

853 F.2d at 808-10.

Eiser's expert report, however, has its problems. Specifically, Eiser's report makes several references to Sheriff Glanz and TCSO as having exhibited "deliberate indifference." As plaintiff's counsel acknowledged in the February 6 *Daubert* hearing, whether defendants were deliberately indifferent to a risk posed to Henderson is an ultimate issue for a jury to determine. The Court will instruct the jury on the meaning of deliberate indifference in the context of plaintiff's claim under 42 U.S.C. § 1983, and it is thus inappropriate for Eiser to specifically opine on whether he believes deliberate indifference is present in this case. Eiser's expert report also states that TCSO's conduct is "shocking to the conscience" and contains other conclusions regarding Sheriff Glanz's state of mind. (Doc. 92-1, at 11). Statements such as these are likewise impermissible insofar as they articulate Eiser's opinions with respect to issues that are within the exclusive province of the jury. The Court will not permit expert testimony with respect to ultimate issues of law. While Mr. Eiser will be permitted to testify in accordance with this Opinion and Order, he is cautioned that testimony prohibited by the principles announced in *Specht* will not be permitted at trial.

**IT IS THEREFORE ORDERED** that defendants' Motion and Brief to Strike Expert Report of Plaintiff's Expert Jeff Eiser (Doc. 80) is **denied**.

**SO ORDERED** this 18th day of June, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE